999 A.2d 427

ABBY RYAN AND KIRK RYAN, PLAINTIFFS-APPELLANTS, v. ANDREW RENNY, M.D., DEFENDANT-RESPONDENT.

Argued March 9, 2010—Decided July 22, 2010.

Rivera–Soto, J., dissented and filed opinion.

40

*Donald G. Targan* argued the cause for appellants (*Targan & Pender*, attorneys; *Mr. Targan* and *Michael J. Pender*, on the brief).

*James M. Ronan, Jr.*, argued the cause for respondent (*Ronan, Tuzzio & Giannone*, attorneys; *Mr. Ronan* and *Lauren H. Zalepka*, of counsel and on the briefs).

*Abbott S. Brown* submitted a brief on behalf of amicus curiae The New Jersey Association For Justice (*Bendit Weinstock*, attorneys).

*John Zen Jackson* submitted a brief on behalf of amicus curiae Medical Society of New Jersey (*Kalison, McBride, Jackson & Robertson*, attorneys).

Justice LONG delivered the opinion of the Court.

Defendant, who is board-certified in gastroenterology and internal medicine, performed a routine colonoscopy on plaintiff as a result of which she suffered a perforated colon. Plaintiff sued defendant for medical malpractice. In these circumstances, the Affidavit of Merit statute [1] requires that the plaintiff's affiant be board-certified in the same specialty or subspecialty as the defendant. Despite contacting several potential experts, plaintiff's counsel was unable to locate a board-certified gastroenterologist willing to provide an affidavit of merit but proffered, within sixty days of the filing of defendant's answer, an affidavit by a surgeon

---

[1] The Affidavit of Merit statute, *N.J.S.A.* 2A:53A–26 to –29, encompasses the New Jersey Medical Care Access and Responsibility and Patients First Act, *N.J.S.A.* 2A:53A–37 to –42.

who had experience performing colonoscopies, repairing tears relating to colonoscopies, and who had published multiple articles on the topic. Defendant moved to dismiss, and plaintiff filed a cross-motion for a waiver of the specialty requirement pursuant to *N.J.S.A.* 2A:53A–41(c). The trial judge found that plaintiff had made a good faith effort to comply with the statute and waived the specialty requirement, permitting plaintiff to rely on the previously filed affidavit.

The Appellate Division held that a waiver should not have been granted and dismissed the complaint. The panel explained that in seeking the waiver, plaintiff's counsel had identified three gastroenterologists who declined to provide an affidavit but failed to explain the reasons for the refusals. The panel found that omission "a crucial failure in plaintiff's application for a section 41c waiver."

This case presents us with an opportunity to interpret the waiver provision and to answer the question of whether the notion of a "good faith effort" contemplates a substantive explanation, to the court, why experts in defendant's field refused to supply plaintiff with an opinion. We hold that it does not and thus, the Appellate Division's superimposition of that requirement on the good faith analysis was unauthorized.

The waiver provision also prescribes that where plaintiff has made a good faith showing of inability to identify an expert in the same specialty or subspecialty as defendant, his proposed expert must possess "sufficient training, experience and knowledge to provide the testimony as a result of active involvement in, or full-time teaching of, medicine in the applicable area of practice or a related field of medicine." We interpret that language as a broad grant of discretion to the trial judge that does not bear with it, as defendant argues, a temporal requirement that the proposed expert be engaged in performing the medical procedure at issue on the date of the occurrence giving rise to the claim. Rather, the expert may have derived his training, experience, and knowledge "as a result of" prior practice in the field. That is not to suggest

that a lapse of time may not bear on a judge's assessment of an expert's training, experience, and knowledge, only that it is not an automatic disqualifier. To the extent that the Appellate Division ruled otherwise, we reverse.

## I.

The facts are brief. On January 29, 2007, defendant, Dr. Andrew Renny, performed a routine colonoscopy on plaintiff, Abby Ryan. The procedure resulted in a perforated colon, which Ryan alleges was caused by Dr. Renny's negligence. On October 17, 2007, Ryan filed a complaint against Dr. Renny alleging that he was negligent in his treatment of Ryan and that he deviated from accepted standards of care.[2]

In support of the complaint, Ryan submitted an affidavit by Dr. David Befeler, a surgeon who is not board-certified in gastroenterology. In respect of his qualifications, the affidavit states: "I am currently engaged in the practice of general surgery and related procedures, including colonoscopies, and am board certified in same, and have been so for more than five years."

Dr. Renny objected to the affidavit on the ground that it did not issue from a board-certified gastroenterologist. A Ferreira [3] conference was held, during which Ryan conceded that she had not been able to procure an affidavit of merit from a board-certified specialist in gastroenterology. The dispute remained unresolved following the conference.

After the expiration of the 120–day time period for providing an affidavit of merit, Dr. Renny moved to dismiss the complaint with prejudice for failure to submit an affidavit executed by a person

---

[2] Ryan's husband sued per quod.

[3] Ferreira v. Rancocas Orthopedic Associates, 178 N.J. 144, 154, 836 A.2d 779 (2003), provides that "an accelerated case management conference [will] be held within ninety days of the service of an answer in all malpractice actions" in order to avoid inadvertent failures to file an affidavit of merit and thus "shepherd legitimate claims expeditiously to trial[.]"

meeting the specialty criteria set by *N.J.S.A.* 2A:53A–41(a). Ryan filed a cross-motion for a waiver of the specialty requirements pursuant to *N.J.S.A.* 2A:53A–41(c).

In support of the cross-motion, Ryan provided Dr. Befeler's curriculum vitae and portions of his testimony at a 2004 deposition in an unrelated case. According to his curriculum vitae, Dr. Befeler has published in the area of gastroenterology since the 1960s. His deposition testimony indicates that he has performed more than 100 colonoscopies, the last one "several years" prior to 2004. Also, Dr. Befeler certified that he has been a board-certified general surgeon since 1966. The certification stated that, as a current attending surgeon at Overlook Hospital,

3. ... I have continually been involved with treatment, diagnosis and evaluation of colon and bowel abnormalities and diseases. Although I do not perform colonoscopies at the present time, I continually have involvement in injuries, conditions and diseases of the bowel and related areas.

4. In the current treatment of patients, I am often required to evaluate symptoms that require the need to have colonoscopies performed to determine a diagnosis of conditions that may require surgery and other types of treatment.

5. I periodically review findings of colonoscopies in the course of diagnoses and ruling out conditions that may require surgery and treatment.

Ryan's counsel certified to his good faith but unsuccessful efforts to provide an affidavit of merit by a physician with the same board certification as Dr. Renny. He contacted three attorneys experienced in medical malpractice, in three different geographical areas of the state, each of whom provided him with the name of an expert, board-certified in gastroenterology. He then contacted the three physicians, "and generally outlined the facts relating to the case in question," and each "declined to provide an opinion relating to the actions of the defendant[.]" Thereafter, counsel

contacted Dr. David Befeler, who, although not certified in each of the sub-specialties of gastroenterology and internal medicine, has an enormous amount of experience, knowledge and skill relating to the issues involved in this case, and has been qualified by the Court of New Jersey to give opinions on these types of issues that we have in this case, a large tear in the colon.

At argument on the motion, Dr. Renny contended that Ryan's counsel had not demonstrated a good faith effort to obtain an expert board-certified in gastroenterology because counsel's certi-

fication did not explain why the three specialists contacted declined to give an opinion. Absent an explanation, the court may infer, Dr. Renny argued, that the specialists believed that he did not deviate from the applicable standard of care and accordingly that Ryan's claim lacked merit. In addition, Dr. Renny contended that Dr. Befeler is not qualified to render an opinion on the applicable standard of care because he was not actively performing colonoscopies at the time of the procedure giving rise to the claim.

Ryan's counsel countered that he satisfied the good faith standard of the waiver provision and that Dr. Befeler is qualified to opine on whether Dr. Renny deviated from the standard. He argued further that the fact that he could not obtain an opinion from a board-certified gastroenterologist did not necessarily reflect on the merits of the case. Rather, he contended that specialists may refuse to render an opinion for many reasons, including general unwillingness to become embroiled in litigation. In addition, Ryan's counsel argued that Dr. Befeler is qualified to render an opinion in this case because the "actively involved" element of the waiver provision should be read broadly to include presently engaging in "procedures relating to the colon," and because Dr. Befeler previously performed colonoscopies with respect to which there is no temporal limitation in the waiver provision.

At the close of oral argument, the trial judge granted Ryan's motion to waive the specialty requirements and denied Dr. Renny's motion to dismiss the complaint for failure to comply with the Affidavit of Merit statute. The judge held that a plaintiff does not have to explain why efforts to obtain a board-certified expert were unsuccessful. As he observed, those reasons "are probably privileged anyway." He further reasoned that the Legislature did not intend for the affidavit of merit procedure to become a discovery device and concluded that Ryan's counsel made a good faith effort to identify an expert in the same specialty as defendant.

With regard to the second part of the waiver provision, the judge concluded that Dr. Befeler is "currently actively involved" in

the applicable area of practice, even though he no longer performs colonoscopies. He identified the area as gastroenterology, and defined it as the "treatment, diagnosis and evaluation of colon and bowel abnormalities and diseases." The judge concluded that current performance of colonoscopies is not a requirement of the statute. The effect of the grant of the waiver was to approve Ryan's use of Dr. Befeler's timely filed affidavit of merit.[4]

Dr. Renny moved for leave to appeal, which was granted. Before the Appellate Division, Dr. Renny contended that demonstration of a "good faith effort" requires an explanation as to why a specialist could not be obtained; the proffered expert must have "active involvement" at the time of the incident at issue; and that "active involvement" requires that the proffered expert must actually perform the procedure giving rise to the claim.

The appellate panel reversed on the ground that Ryan had not demonstrated a good faith effort to identify an expert who meets the requirements of *N.J.S.A.* 2A:53A–41(a). *Ryan v. Renny*, 408 *N.J.Super.* 590, 596–97, 975 *A.*2d 971 (App.Div.2009). In ruling, the panel denominated the absence of an explanation of why the three gastroenterologists declined to provide an opinion as "a crucial failure in plaintiff's application for a section 41c waiver." *Id.* at 596, 975 *A.*2d 971. The gist of the court's reasoning was its apparent belief that if a plaintiff could not obtain an affidavit from an equivalently-qualified[5] expert to defendant, it would follow that

---

[4] We note that our dissenting colleague's contention that Ryan's submission of Dr. Befeler's report was untimely was neither raised, briefed, nor argued by Dr. Renny here or in the courts below. In that connection, it is well settled that we will decline to consider such an issue for the first time on appeal. *N.J. Div. of Youth & Family Servs. v. M.C.*, 201 *N.J.* 328, 990 *A.*2d 1097 (2010). On the merits, Dr. Befeler's report was filed prior to Dr. Renny's answer—well within the time frames provided in the Affidavit of Merit statute—and was declared by the trial judge to satisfy the substantive requirements of the statute. Put another way, a proper affidavit of merit was, in fact, timely filed.

[5] We use the phrase "equivalently-qualified" throughout this opinion to mean one who specializes in the same field as defendant.

his claim was specious. The only exceptions recognized by the panel are cases where "appropriately qualified experts are either rare or for some reason unavailable to the plaintiff." *Id.* at 596–97, 975 *A.*2d 971. By way of example, the court referenced situations in which the expert has "a conflict with the parties or counsel; does not testify in court or execute affidavits in connection with litigation; or has limited his activities to one geographical area." *Id.* at 596, 975 *A.*2d 971. According to the panel, only then may the court "proceed to step two[:] scrutiny of the proposed expert's training, knowledge and expertise." *Ibid.* The court thus granted Dr. Renny's motion to dismiss the complaint with prejudice for failure to comply with the "good faith effort" prong of the Affidavit of Merit statute. That ruling made it unnecessary for the court to address the second prong of the statute.

We granted Ryan's petition for certification, 200 *N.J.* 504, 983 *A.*2d 1111 (2009). While this appeal was pending, Dr. Renny moved to supplement the record to advance additional challenges to Dr. Befeler's credentials. Because of the appellate posture of the case, we denied the motion.

## II.

On the petition, Ryan argues that the plain language of the waiver provision does not impose on the moving party the burden of explaining why an expert in the relevant specialty could not be procured; that "active involvement" should be read broadly to encompass procedures related to the colon other than colonoscopies; and, that the waiver provision does not impose a temporal limitation on when the expert amassed his expertise. Amicus New Jersey Association for Justice ("NJAJ") is in fundamental agreement with Ryan. Additionally, NJAJ challenges the soundness of the Affidavit of Merit statute.

In response, Dr. Renny contends that "good faith effort" requires an explanation why a specialist could not be obtained; and, that the term "active involvement" requires proof that Dr. Befeler

was actually performing colonoscopies "at the time of the occurrence giving rise to the claim." Amicus Medical Society of New Jersey, joined by the American Medical Association, is in fundamental agreement with Dr. Renny.

### III.

■ Under *Rules* 601 and 702 of the *New Jersey Rules of Evidence*, the determination of whether a witness is qualified to testify as an expert generally rests in the sound discretion of the trial judge. That discretion can, of course, be guided by statute. *See, e.g., State v. One Marlin Rifle*, 319 *N.J.Super.* 359, 369, 725 *A.2d* 144 (App.Div.1999) (finding error in trial court's acceptance of nurse's opinion testimony regarding specific identity and cause of condition "clearly ... constituted a medical diagnosis," prohibited by *N.J.S.A.* 45:11–23(b)); *Mizrahi v. Allstate Ins. Co.*, 276 *N.J.Super.* 112, 118–20, 647 *A.2d* 486 (Law Div.1994) (precluding testimony by insurance consultants who were not licensed as required by statute). Indeed, there is nothing in our jurisprudence "to suggest that the broad view of expert qualification embodied in the rules of evidence is sufficient to permit the testimony when the Legislature expresses a contrary view." *Mizrahi, supra*, 276 *N.J.Super.* at 117, 647 *A.2d* 486.

■ The Affidavit of Merit statute is such an expression. It prescribes in relevant part:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.
>
> [*N.J.S.A.* 2A:53A–27.]

The statute applies to all actions for damages based on professional malpractice. *Charles A. Manganaro Consulting Eng'rs, Inc. v.*

*Carneys Point Twp. Sewerage Auth.*, 344 *N.J.Super.* 343, 347, 781 *A.*2d 1116 (App.Div.2001) (holding Affidavit of Merit statute applied to defendant's malpractice counterclaim).

The core purpose underlying the statute is "to require plaintiffs ... to make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily could be identified at an early stage of litigation." *In re Petition of Hall*, 147 *N.J.* 379, 391, 688 *A.*2d 81 (1997) (quoted in *Alan J. Cornblatt, P.A. v. Barow*, 153 *N.J.* 218, 242, 708 *A.*2d 401 (1998), *modified in part by, Ferreira, supra*, 178 *N.J.* at 154, 836 *A.*2d 779). Importantly, "there is no legislative interest in barring meritorious claims brought in good faith." *Ferreira, supra*, 178 *N.J.* at 150–51, 836 *A.*2d 779 (citing *Galik v. Clara Maass Med. Ctr.*, 167 *N.J.* 341, 359, 771 *A.*2d 1141 (2001)). Indeed, "[t]he legislative purpose was not to 'create a minefield of hyper-technicalities in order to doom innocent litigants possessing meritorious claims.'" *Id.* at 151, 836 *A.*2d 779 (quoting *Mayfield v. Cmty. Med. Assocs.*, 335 *N.J.Super.* 198, 209, 762 *A.*2d 237 (App.Div.2000)).

In its original iteration, the statute broadly required that the affidavit be executed by an affiant who was "licensed" and had "expertise in the general area or specialty involved in the action, as evidenced by board certification or by devotion of the person's practice substantially to the general area or specialty involved in the action for a period of at least five years[.]" *L.* 1995, *c.* 139, § 2. Under that standard, a physician in one field was qualified to render an opinion with respect to the performance of a physician in another if their practices overlapped. *Burns v. Belafsky*, 166 *N.J.* 466, 480, 766 *A.*2d 1095 (2001).

In 2004, the Legislature enacted the New Jersey Medical Care Access and Responsibility and Patients First Act ("Act"), *L.* 2004, *c.* 17; *N.J.S.A.* 2A:53A–37 to –42, which modifies the Affidavit of Merit statute and applies to causes of action arising after July 7, 2004, *L.* 2004, *c.* 17, § 33. The 2004 amendments were part of a comprehensive package of tort reforms enacted to address the "dramatic escalation in medical malpractice liability insurance

premiums[.]" *N.J. State Bar Ass'n v. State,* 387 *N.J.Super.* 24, 36, 902 *A.*2d 944 (App.Div.), *certif. denied,* 188 *N.J.* 491, 909 *A.*2d 726 (2006).

The 2004 version provides more detailed standards for a testifying expert and for one who executes an affidavit of merit, generally requiring the challenging expert to be equivalently-qualified to the defendant:

In an action alleging medical malpractice, a person shall not give expert testimony or execute an affidavit pursuant to the provisions of P.L.1995, c. 139 (C. 2A:53A–26 et seq.) on the appropriate standard of practice or care unless the person is licensed as a physician or other health care professional in the United States and meets the following criteria:

a. *If the party against whom or on whose behalf the testimony is offered is a specialist or subspecialist* recognized by the American Board of Medical Specialties or the American Osteopathic Association and the care or treatment at issue involves that specialty or subspecialty recognized by the American Board of Medical Specialties or the American Osteopathic Association, *the person providing the testimony shall have specialized at the time of the occurrence that is the basis for the action in the same specialty or subspecialty,* recognized by the American Board of Medical Specialties or the American Osteopathic Association, as the party against whom or on whose behalf the testimony is offered, and *if the person against whom or on whose behalf the testimony is being offered is board certified and the care or treatment at issue involves that board specialty or subspecialty recognized by the American Board of Medical Specialties or the American Osteopathic Association, the expert witness shall be:*

(1) a physician credentialed by a hospital to treat patients for the medical condition, or to perform the procedure, that is the basis for the claim or action; or

(2) *a specialist or subspecialist recognized by the American Board of Medical Specialties or the American Osteopathic Association who is board certified in the same specialty or subspecialty,* recognized by the American Board of Medical Specialties or the American Osteopathic Association, *and during the year immediately preceding the date of the occurrence that is the basis for the claim or action,* shall have devoted a majority of his professional time to either:

(a) *the active clinical practice of the same health care profession in which the defendant is licensed,* and, if the defendant is a specialist or subspecialist recognized by the American Board of Medical Specialties or the American Osteopathic Association, the active clinical practice of that specialty or subspecialty recognized by the American Board of Medical Specialties or the American Osteopathic Association; or

(b) the instruction of students in an accredited medical school, other accredited health professional school or accredited residency or clinical research program in the same health care profession in which the defendant is licensed, and, if that party is a specialist or subspecialist recognized by the American Board of Medical

Specialties or the American Osteopathic Association, an accredited medical school, health professional school or accredited residency or clinical research program in the same specialty or subspecialty recognized by the American Board of Medical Specialties or the American Osteopathic Association; or

(c) both.

b. *If the party against whom or on whose behalf the testimony is offered is a general practitioner, the expert witness, during the year immediately preceding the date of the occurrence that is the basis for the claim or action, shall have devoted a majority of his professional time to:*

(1) *active clinical practice as a general practitioner; or active clinical practice that encompasses the medical condition, or that includes performance of the procedure, that is the basis of the claim or action; or*

(2) the instruction of students in an accredited medical school, health professional school, or accredited residency or clinical research program in the same health care profession in which the party against whom or on whose behalf the testimony is licensed; or

(3) both.

[*N.J.S.A.* 2A:53A–41 (emphasis added).]

The 2004 amendments also provide for waiver of the newly-tightened requirements in certain circumstances:

A court may waive the same specialty or subspecialty recognized by the American Board of Medical Specialties or the American Osteopathic Association and board certification requirements of this section, upon motion by the party seeking a waiver, if, after the moving party has demonstrated to the satisfaction of the court that a good faith effort has been made to identify an expert in the same specialty or subspecialty, the court determines that the expert possesses sufficient training, experience and knowledge to provide the testimony as a result of active involvement in, or full-time teaching of, medicine in the applicable area of practice or a related field of medicine.

[*N.J.S.A.* 2A:53A–41(c).]

In general, upon appropriate findings by the trial judge, the waiver provision opens the door for a non-equivalently-qualified expert in the same field as defendant to testify, and permits an expert in one field to opine on the performance of an expert in another related field. It is the meaning of "good faith effort" and "active involvement" in the waiver provision that is at the heart of this case, which involves a question of statutory interpretation.

## IV.

 A court's role in statutory interpretation "is to determine and effectuate the Legislature's intent." *Bosland v. Warnock Dodge, Inc.*, 197 *N.J.* 543, 553, 964 *A.*2d 741 (2009) (citation omitted). Generally, the best indicator of that intent is the statutory language itself. *DiProspero v. Penn*, 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005). Thus, a court begins with the words of the statute and ascribes to them their ordinary meaning. *Mason v. City of Hoboken*, 196 *N.J.* 51, 68, 951 *A.*2d 1017 (2008). A court should read the disputed language "in context with related provisions so as to give sense to the legislation as a whole[.]" *Di-Prospero, supra*, 183 *N.J.* at 492, 874 *A.*2d 1039.

 If the meaning of the statutory words is clear, the analysis is complete and the court need look no further. *Mason, supra*, 196 *N.J.* at 68, 951 *A.*2d 1017. It is not the court's function to " 'rewrite a plainly-written enactment of the Legislature [or] presume that the Legislature intended something other than that expressed by way of the plain language.' " *Marino v. Marino*, 200 *N.J.* 315, 329, 981 *A.*2d 855 (2009) (alteration in original) (quoting *O'Connell v. State*, 171 *N.J.* 484, 488, 795 *A.*2d 857 (2002)). Nor may it " 'engage in conjecture or surmise which will circumvent the plain meaning of the act[.]' " *DiProspero, supra*, 183 *N.J.* at 492, 874 *A.*2d 1039 (quoting *In re Closing of Jamesburg High Sch.*, 83 *N.J.* 540, 548, 416 *A.*2d 896 (1980)). Only if the statutory language is susceptible to "more than one plausible interpretation" may the court turn to extrinsic aids such as legislative history. *DiProspero, supra*, 183 *N.J.* at 492, 874 *A.*2d 1039. That is the backdrop for our inquiry.

## V.

 We turn first to the requirement of the waiver provision that the moving party must demonstrate to the satisfaction of the court that he has made a good faith effort to identify an expert in the same specialty as defendant. Dr. Renny says, and the Appellate Division agreed, that the reasons experts declined plaintiff's

request that they execute an affidavit of merit are crucial to the judge's determination of whether plaintiff made a good faith effort. In particular, Dr. Renny argues that if the experts turned plaintiff down because they did not find that a deviation from the standard of care had occurred, plaintiff should not be permitted a substitute expert because that would allow a non-meritorious claim to survive. We disagree.

The problem with Dr. Renny's position is that it does not accord with the plain language of the waiver provision, which directs the judge to focus on the "effort" the moving party made to obtain a statutorily-authorized expert, and not on the reasons why a particular expert or experts declined to execute an affidavit. That focus reflects a legislative judgment that the moving party should make a legitimate attempt to obtain an equivalently-qualified expert and should not be relieved of that burden by desultory undertakings or half-hearted endeavors. It follows that, to prove a good faith effort, a moving party must show what steps he undertook to obtain an expert qualified according to *N.J.S.A.* 2A:53A–41(a) or (b). By way of example, that would include: the number of experts in the field; the number of experts the moving party contacted; whether and where he expanded his search geographically when his efforts were stymied; the persons or organizations to whom he resorted for help in obtaining an appropriate expert; and any case-specific roadblocks (such as the absence of local sub-specialty experts) he encountered. However, the experts' reasons for declining simply do not bear on the robustness of movant's "efforts[.]"

Indeed, the very existence of the waiver provision makes it obvious to us that the Legislature did not intend a malpractice case to stand or fall solely on the presence or absence of a same-specialty expert. If that were the case, the Legislature would not have provided for waiver or, at the very least, would have declared that waiver was somehow limited by the substance of an expert's refusal to execute an affidavit. It did not do so.

By the broad waiver provision, the Legislature explicitly recognized that there would be legitimate malpractice claims for which

a plaintiff would not be able to obtain an affidavit of merit from an equivalently-qualified expert or even from an expert in the same field. It thus created a safety valve for those cases by providing the judge with broad discretion to accept an expert with "sufficient training, experience and knowledge to provide the testimony[,]" but only if plaintiff made a good faith effort to satisfy the statute. The Legislature left it to the "satisfaction of the court" to determine whether an honest "effort" was made to identify an expert in the same specialty or subspecialty. It is the "effort" of the movant that is the focal point of the waiver provision.[6]

Here, Ryan's counsel attested to his attempts to secure the affidavit of a board-certified gastroenterologist. He contacted three attorneys experienced in medical malpractice in three different areas of the state; each of them provided him with the name of a board-certified gastroenterologist; in turn, he contacted each of them and outlined the facts of the case; those experts declined to offer an opinion regarding deviation. The trial judge was satisfied that, under the statute, the efforts that Ryan undertook were sufficient to establish good faith. We agree. In so doing, we reiterate that there is nothing in the statute that requires more and that the trial judge's acceptance of what was proffered was plainly not an abuse of discretion.

By this ruling, we reaffirm that it is the duty of litigants to make a good faith effort to obtain an equivalently-qualified expert in a malpractice case, yet honor the Legislature's desire to permit

---

[6] An additional problem with the Appellate Division's paradigm is that it does not take into account the rules governing expert discovery in civil cases. *See generally R.* 4:10–2, *R.* 4:17–1, and *R.* 4:17–4. For example, under *Rule* 4:10–2(d)(3), the opinion of an expert consulted in anticipation of litigation who is not expected to be called as a witness at trial can only be discovered "upon a showing of exceptional circumstances under which it is impractical for the party seeking discovery to obtain facts or opinions" by other means. By making the reasons an expert declined to provide an affidavit of merit a required element of a waiver motion, the Appellate Division has written the exceptional circumstances standard out of the rule and permitted the adversary discovery to which he is not otherwise entitled.

meritorious cases, for which no equivalently-qualified expert can be obtained, to be aired in a courtroom. That is, in the final analysis, the goal of the Affidavit of Merit statute.

## VI.

We next address Dr. Renny's argument that even if Ryan made a good faith effort, Dr. Befeler cannot satisfy the second prong of the waiver provision because he was not actually performing colonoscopies "at the time of the occurrence giving rise to the claim." [7] According to Dr. Renny, that is the meaning of "active involvement[.]" We return to the language of the statute, which permits the court to waive the same specialty or subspecialty requirement if it determines "that the expert possesses sufficient training, experience and knowledge to provide the testimony as a result of active involvement in, or full-time teaching of, medicine in the applicable area of practice or a related field of medicine," *N.J.S.A.* 2A:53A–41(c).

In arguing that Dr. Befeler cannot satisfy the statute because he was no longer performing colonoscopies when Ryan sustained her injury, Dr. Renny seeks to add an element to the waiver provision that is not there and to superimpose the strict time limits in other sections of the Act onto that provision. For example, where the defendant is a specialist or subspecialist, the person providing the testimony against him "shall have specialized *at the time of the occurrence* that is the basis for the action in the same specialty or subspecialty[.]" *N.J.S.A.* 2A:53A–41(a) (emphasis added). Further, where the defendant is board certified, the witness against him must also be board certified in the same specialty or subspecialty [8] and *"during the year immediately*

---

[7] The Appellate Division did not reach that purely legal issue because of its dismissal of Ryan's complaint for failure to satisfy the good faith effort prong of the Act.

[8] Alternatively, the witness shall be "a physician credentialed by a hospital" to treat the condition or perform the procedure that is the basis for the claim. *N.J.S.A.* 2A:53A–41(a)(1).

*preceding the date of the occurrence* that is the basis for the claim or action, shall have devoted a majority of his professional time to" active clinical practice or teaching of the specialty or subspecialty. *N.J.S.A.* 2A:53A–41(a)(2) (emphasis added). Likewise, where the defendant is a general practitioner, the expert witness, *"during the year immediately preceding the date of the occurrence* that is the basis for the claim or action, shall have devoted a majority of his professional time to" teaching or to active clinical practice as a general practitioner or in a practice that encompasses the medical condition or includes performance of the procedure at issue. *N.J.S.A.* 2A:53A–41(b) (emphasis added).

Under those provisions, which will govern the vast majority of cases, whether the defendant is a specialist, board-certified, or a general practitioner, the Legislature has demanded a degree of contemporaneity in the qualifications of the expert witness. There is no similar requirement of temporality in the plain language of the waiver provision. Given the specific directives by the Legislature in connection with equivalently-qualified experts in subsections (a) and (b) of the Act, we have no reservation in concluding that when it omitted such a requirement from the waiver provision, which it enacted simultaneously, it did so purposely.

Indeed, it is elementary that when the Legislature includes limiting language in one part of a statute, but leaves it out of another section in which the limit could have been included, we infer that the omission was intentional. *See In re Estate of Santolino*, 384 *N.J.Super.* 567, 581, 895 *A.2d* 506 (Ch.Div.2005) (applying canon of statutory construction inclusio unius est exclusio alterius). *See also Fiore v. Consol. Freightways*, 140 *N.J.* 452, 466, 659 *A.2d* 436 (1995) (holding we must read all parts of a statute together and not consider separate sections in a vacuum) (citing Norman T. Singer, *Sutherland Statutory Construction* § 46.05 (5th ed. 1992)).

Dr. Renny's suggestion that the use of the term "active" involvement is a doppelganger for a temporality requirement is likewise belied by the other provisions of the Act. As is clear from

subsections (a) and (b), the word "active" describes the nature of the expert's practice and is entirely distinct from the separate time limitations in the Act.

We think that the likely purpose underlying the omission of any temporal limitation from the waiver provision was a recognition by the Legislature that waiver is the last chance for a plaintiff to meet the affidavit of merit requirement and avoid dismissal. Thus it approached the qualifications issue expansively, opening the door for physicians and professors who had actively practiced in the relevant field or a related one, but who had retired or moved into a different area of specialization, to serve as experts under the waiver provision. That expansive approach also permits a practitioner qualified to perform the medical procedure at issue who has opted no longer to do so to appear as a witness.[9] Indeed, that notion gels with the Legislature's use of the words "as a result of." Unlike the other sections of the statute which declare exactly when the expert must have developed his knowledge and experience, the waiver provision permits the judge to accept evidence from an expert he deems to have sufficient training, experience, and knowledge derived "as a result of"—that is, as a consequence of or flowing from prior "active involvement in, or full-time teaching of, medicine in the applicable area of practice or a related field[.]" *N.J.S.A.* 2A:53A–41(c). The "as a result of" language is the critical path to interpreting the waiver provision because it introduces into the analysis an expert who no longer practices or teaches in a particular field or who no longer performs the medical procedure at issue, but whose past edu-

---

[9] For example, studies show that a significant percentage of obstetricians and gynecologists have stopped delivering babies because "liability insurance for obstetrician-gynecologists (ob-gyns) has become prohibitively expensive and is forcing ob-gyns to restrict or abandon their obstetrical practices." Pamela Robinson, et al., *The Impact of Medical Legal Risk on Obstetrician–Gynecologist Supply,* 105(6) Obstetrics & Gynecology 1281, 1296–1302 (2005). We think that the Legislature intended to permit physicians who ceased delivering babies because of malpractice premiums to testify on the standard of care applicable to those who continue to do so.

cation, practice, and experience fully warrant permitting him to serve as an expert.

We thus reject Renny's argument that because Dr. Befeler was no longer performing colonoscopies at the time of the incident at issue, despite the fact that he had performed them earlier in his career, he could not qualify, as a matter of law, as an expert witness in this case.

That is not to suggest that the implications of the passage of time are an improper consideration for the trial judge who is assessing an expert's qualifications under the waiver provision. Although no bright-line disqualifier exists, it is clear to us that in the exercise of discretion in a waiver case, the trial court may take into account the passage of time and its relationship to the expert's qualifications. Thus, for example, if a party establishes that practice in a particular medical field has undergone a sea-change over time due to developments that have occurred since the expert was trained and actively practiced in the field, the judge may well consider that factor in evaluating the expert's qualifications. In the final analysis, it is within the broad discretion of the trial judge to determine whether a particular witness's knowledge, experience, and training warrant his service as an expert under the waiver provision.

Here, the trial judge found that Dr. Befeler had performed colonoscopies in the past, that present performance of colonoscopies is not a requirement of the statute, and, based on his present practice, that Dr. Befeler was "actively involved" in the "treatment, diagnosis and evaluation of colon and bowel abnormalities and diseases." As such, the trial judge qualified the doctor as an expert under the waiver provision.

Although from this record it seems to us that in reaching his conclusions the trial judge took into account the principles to which we have here adverted, in an abundance of caution, and because we have here broken new ground, we remand the matter to him for further consideration in light of this opinion. During

that proceeding, Dr. Renny may raise the additional challenges to Dr. Befeler's credentials that he advanced before us on motion.

## VII.

Based upon the plain language of the Affidavit of Merit statute, the judgment of the Appellate Division declaring that Ryan failed to satisfy the good faith standard of the waiver provision of *N.J.S.A.* 2A:53A–41(c) is reversed. The matter is remanded to the trial judge for further proceedings consistent with this opinion.

Justice RIVERA–SOTO, dissenting.

Giving bare passing reference to the core principles of statutory construction intended to govern the interpretation of statutes, *ante* at 54–55, 999 *A.*2d at 437–38, the majority contorts the plain language of the Affidavit of Merit statute (AMS), *N.J.S.A.* 2A:53A–26 to –29, as modified by the New Jersey Medical Care Access and Responsibility and Patients First Act (Medical Care Access Act), *N.J.S.A.* 2A:53A–37 to –42. It does so to achieve a result: to preserve plaintiff's claim and to rescue plaintiff's counsel from the consequences of his own, unexplained inaction. Because that result comes at the expense of untold violence to a clear and unambiguous legislative direction and, more to the point, unconscionably denies a defendant a right specifically granted to him by the Legislature—the right to be free of malpractice claims of questionable merit—I dissent.

## I.

The AMS is a clearly worded and straightforward statute. It specifically requires that

[i]n any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in

> the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.
> [*N.J.S.A.* 2A:53A–27.]

The AMS also provides that "[t]he court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause." *Ibid.*

It is undisputed that plaintiff Abby Ryan's claim against defendant Andrew Renny, M.D. alleged professional malpractice in defendant's provision of medical services to plaintiff,[1] namely, in performing a colonoscopy on plaintiff. It is also undisputed that defendant was a "licensed person" under the AMS. *See N.J.S.A.* 2A:53A–26(f) (defining "licensed person" to include "a physician in the practice of medicine or surgery"). Thus, on the face of the complaint, the requirements of the AMS apply to this civil action.

Plaintiff clearly understood that, in order to proceed with her complaint against defendant, she would have to comply with the AMS; that understanding was reinforced by defendant's November 21, 2007 answer and separate defenses, which specifically "assert[ed] any and all relief available pursuant to" the AMS and the Medical Care Access Act. Indeed, on October 24, 2007, almost a month *before* the filing of defendant's answer and separate defenses and thus before the initial sixty day time period provided in the AMS even began to run, plaintiff filed what she claimed was

---

[1] Kirk Ryan, plaintiff Abby Ryan's husband, also is listed as a plaintiff. However, because he advances only a per quod claim, "the viability of [that claim] is subject to the survival of [his wife]'s claim." *Sciarrotta v. Global Spectrum*, 194 *N.J.* 345, 350 n. 3, 944 *A.2d* 630 (2008). *See also Kibble v. Weeks Dredging & Constr. Co.*, 161 *N.J.* 178, 190, 735 *A.2d* 1142 (1999) (explaining that "loss of consortium, or *per quod*, claim is intended to compensate a person for the loss of a spouse's society, companionship and services due to the fault of another[,]" and that "a *per quod* claim is derivative of the injured spouse's personal injury cause of action" (citations and internal quotation marks omitted)); *Murphy v. Implicito*, 392 *N.J.Super.* 245, 269, 920 *A.2d* 678 (App.Div.2007) (noting that, "[i]n general, a per quod claim includes the right of a husband or wife to receive compensation for loss of affection, comfort, companionship, society, assistance and sexual relations lost as a result of the other's personal injuries" (citing Dan B. Dobbs, *The Law of Torts* § 310 at 841–43 (2001))). For that reason, all references to plaintiff shall be solely to Abby Ryan.

her required affidavit of merit. It is the sufficiency of that affidavit that is central to this appeal.

## II.

It is uncontested that defendant is board-certified in gastroenterology[2] and that performing a colonoscopy—the procedure defendant is alleged to have performed negligently on plaintiff—is, without doubt, part of that medical specialty. *See Dorland's Illustrated Medical Dictionary* 601 (24th ed. 1965) (defining "gastroenterology" as "[t]he study of the stomach and intestines and their diseases"); *Merriam–Webster's Medical Dictionary* 140 (2006) (defining "colonoscopy" as "[an] endoscopic examination of the colon" and "colon" as "the part of the large intestine that extends from the cecum to the rectum").

Because defendant is a specialist and the alleged malpractice involves the practice of defendant's specialty, the provisions of the Medical Care Access Act, to the extent they modify the AMS, must be addressed. Section 7 of the Medical Care Access Act, *N.J.S.A.* 2A:53A–41, distinguishes between the rights it affords physician/defendants who are general practitioners and those who are recognized specialists. In respect of the requirements for affidavits of merit submitted against general practitioners, it imposes no additional requirements on medical malpractice plaintiffs—save, of course, for those already present in the AMS.

However, in respect of specialists, the Medical Care Access Act unequivocally mandates that the required affidavit of merit may only be executed by a licensed physician who is board-certified in the same specialty or subspecialty as defendant. *N.J.S.A.* 2A:53A–41(a). The Medical Care Access Act provides a safety valve: an exception from its plain requirement that a board-

---

2 Defendant's status as a board-certified physician also is not in dispute; none other than plaintiff's counsel certified to the trial court that "defendant is Board Certified in the field of [i]nternal medicine and [possesses] a sub-[c]ertification in gastroenterology."

certified physician can only be held to answer upon a timely and compliant affidavit of merit duly executed by a peer board-certified physician. It provides that

[a] court may waive the same specialty or subspecialty ... and board certification requirements of this section, upon motion by the party seeking a waiver, if, after the moving party has demonstrated to the satisfaction of the court that a good faith effort has been made to identify an expert in the same specialty or subspecialty, the court determines that the expert possesses sufficient training, experience and knowledge to provide the testimony as a result of active involvement in, or full-time teaching of, medicine in the applicable area of practice or a related field of medicine.

[*N.J.S.A.* 2A:53A–41(c).]

And, any determination made in respect of any portion of the Medical Care Access Act must be informed by the legislative findings that undergird it:

The Legislature finds and declares that:

a. One of the most vital interests of the State is to ensure that high-quality health care continues to be available in this State and that the residents of this State continue to have access to a full spectrum of health care providers, including highly trained physicians in all specialties;

b. The State's health care system and its residents' access to health care providers are threatened by a dramatic escalation in medical malpractice liability insurance premiums, which is creating a crisis of affordability in the purchase of necessary liability coverage for our health care providers;

c. One particularly alarming result of rising premiums is that there are increasing reports of doctors retiring or moving to other states where insurance premiums are lower, dropping high-risk patients and procedures, and practicing defensive medicine in a manner that may significantly increase the cost of health care for all our citizens;

d. *The reasons for the steep increases in the cost of medical malpractice liability insurance* are complex and *involve issues related to: the State's tort liability system;* the State's health care system, which includes issues related to patient safety and medical error reporting; and the State's regulation and requirements concerning medical malpractice liability insurers;

e. It is necessary and appropriate for the State to take meaningful and prompt action to address the various interrelated aspects of these issues that are impacted by, or impact on, the State's health care system; and

f. To that end, *this act provides for a comprehensive set of reforms affecting the State's tort liability system,* health care system and medical malpractice liability insurance carriers to ensure that health care services continue to be available and accessible to residents of the State and to enhance patient safety at health care facilities.

[*N.J.S.A.* 2A:53A–38 (emphasis supplied).]

Plainly put, then, in order to pursue a malpractice claim against a board-certified physician, the AMS and the Medical Care Access Act, read in harmony, require that a plaintiff satisfy one of only two alternatives: *either* submit an affidavit of merit from a board-certified physician who is certified in the same specialty or subspecialty as the defendant, *or* make a *timely* motion seeking a waiver of the requirement and presenting a viable substitute.

## III.

Although plaintiff admits that defendant is board-certified—and, hence, is entitled to the additional protections of Section 7 of the Medical Care Access Act—the affidavit of merit plaintiff filed on October 24, 2007 on its face did not conform to that statute's requirements: the affidavit was executed by David Befeler, M.D., who, although board-certified in surgery, patently is *not* board-certified in gastroenterology. Shortly after receipt of that non-conforming affidavit of merit, defendant's counsel wrote to plaintiff's counsel, stating:

> I am in receipt of your Affidavit of Merit authored by Dr. [Befeler] with regard to the [*Ryan v. Renny* ] matter. It is my understanding that Dr. [Befeler] is board certified in surgery. My client is board certified in gastroenterology. Pursuant to *N.J.S.A.* 2A:53A–41[, Section 7 of the Medical Care Access Act,] it is our position that you are required to submit an Affidavit of Merit authored by a board certified gastroenterologist. If you contend that Dr. [Befeler] has qualifications other than his board certification in general surgery which make him appropriately qualified to render an Affidavit of Merit in this case, kindly advise me of same.

> Under separate cover I will request that a *Ferreira[ v. Rancocas Orthopedic Associates*, 178 *N.J.* 144, 836 *A.2d* 779 (2003) ] conference be held to address this issue.

Plaintiff did nothing in response. As a result, on March 7, 2008, a *Ferreira* conference was held, during which plaintiff acknowledged that her affidavit of merit was facially insufficient and that she would have to seek a waiver. Despite that admission, plaintiff still did nothing.

On March 27, 2008—more than one hundred twenty days following the date of the filing of the answer and, hence, after the deadline, as extended, provided in the AMS—defendant moved to

dismiss plaintiff's complaint "for failure to provide a sufficient Affidavit of Merit as to the moving defendant." On April 10, 2008—well past the one hundred twenty days allowed under the AMS and, more significantly, *after* defendant moved to dismiss—plaintiff finally cross-moved, seeking a waiver of the board-certification requirements of the Medical Care Access Act, as provided for under *N.J.S.A.* 2A:53A–41(c). Plaintiff's explanation for her non-conforming affidavit of merit is telling; her counsel certified in writing that he had

> contacted an attorney in Atlantic County specializing in a field of medical malpractice who provided ... the name of a specialist in [gastroenterology]. [He had] contacted an attorney in Cherry Hill with a high level of expertise in medical malpractice who provided ... a second individual Board Certified in [gastroenterology]. [He had] also contacted an extremely well-known attorney in North Jersey who provided ... the name of a third physician with certifications in the field of gastroenterology.
>
> Following the receipt of the names of the above individuals, [he] contacted each of the physicians, and generally outlined the facts relating to the case in question, and each of them declined to provide an opinion relating to the actions of [defendant].
>
> Following the above, [he] contacted Dr. David Befeler, who, although not certified in each of the sub-specialties of gastroenterology and internal medicine, has an enormous amount of experience, knowledge and skill relating to the issues involved in this case,[3] and has been qualified by the Court in New Jersey to give opinions on these types of issues what we have in this case, a large tear in the colon.[4]
>
> [ (Paragraph numbering omitted).]

The trial court denied defendant's motion to dismiss for failure to comply with the AMS and granted plaintiff's motion for a

---

[3] According to his curriculum vitae, Dr. Befeler is board-certified only in general surgery and has not been involved in gastrointestinal matters since the late 1960's; in Dr. Befeler's own words, he "do[es] not perform colonoscopies at the present time" and has not performed one since *before* 2004.

[4] The record is curiously silent on when and under what circumstances Dr. Befeler has been qualified as an expert in the New Jersey courts, that is, whether he has even been qualified as an expert in gastroenterology, and, more to the point, whether he has been qualified as an expert since July 7, 2004, the date the Medical Care Access Act became effective. *See L.* 2004, *c.* 17, § 33 (defining effective dates of Medical Care Access Act).

waiver of same-board-certification requirements of the Medical Care Access Act. Defendant sought leave to appeal to the Appellate Division, which was granted. The Appellate Division, in a published opinion, reversed the judgment of the Law Division, concluding that plaintiff's explanation in support of her application for a waiver was lacking, noting that "the waiver provision [of the Medical Care Access Act] would be circumvented if a plaintiff could get a waiver merely by showing that specialists in the area are unwilling to sign an Affidavit of Merit for the plaintiff." *Ryan v. Renny*, 408 *N.J.Super.* 590, 596, 975 *A.*2d 971 (App.Div.2009). This Court granted plaintiff's petition for certification to consider the questions presented in this appeal. *Ryan v. Renny*, 200 *N.J.* 504, 983 *A.*2d 1111 (2009).

## IV.

My colleagues in the majority address first "the requirement of the waiver provision that the moving party must demonstrate to the satisfaction of the court that he has made a good faith effort to identify an expert in the same specialty as defendant[,]" *ante* at 54, 999 *A.*2d at 438, and then whether Dr. Befeler qualified as a meaningful substitute for the same-board-certified requirement of the Medical Care Access Act.[5] *Ante* at 56–61, 999 *A.*2d at 439–42. In doing so, the majority ignores and thus leapfrogs over a dispositive condition precedent: the timeliness of plaintiff's application.[6]

---

[5] While this appeal was pending—but before argument was heard—defendant moved to supplement the record to add certain challenges to Dr. Befeler's credentials. The majority has denied that motion, *ante* at 45, 999 *A.*2d at 432, the subject matter of which the majority entrusts to the trial court on remand. *Ante* at 60–61, 999 *A.*2d at 441-42. Because the correct result here should be to bar as untimely the purported affidavit of merit executed by Dr. Befeler, there would be no need for this Court to consider the allegations raised in that motion. That said, the matters alleged in that motion demand careful and close scrutiny by the trial court.

[6] The majority strives to define the "good faith efforts" and suitability of the substitute expert factors relevant to granting a waiver under *N.J.S.A.* 2A:53A–

As noted, plaintiff well understood she was required to file an affidavit of merit and, in accordance with that understanding, filed one, albeit a non-conforming one.[7] The question then is whether the filing of an admittedly non-conforming affidavit of merit satisfies the AMS's and the Medical Care Access Act's requirements, at least to the extent of preserving the question for a later, untimely motion for a waiver of the Medical Care Access Act's requirements. The answer to that question is "no."

It bears repeating: the Medical Care Access Act specifically requires that a plaintiff in a professional malpractice action against a medical specialist must *either* file an affidavit of merit from a board-certified physician who is certified in the same specialty or subspecialty as the defendant, *or* the plaintiff must make a timely motion to the court seeking a waiver of the requirement, demonstrating that it is made in good faith and presenting a viable substitute.

Everyday common sense tells us that, until a waiver is granted, a non-conforming affidavit of merit—that is, one from someone other than a board-certified physician who is certified in the same specialty or subspecialty as the defendant—is simply no affidavit

---

41(c). No doubt, that discussion may be of some assistance in the future, one in which I likely would join. However, in the peculiar circumstances presented in this case, because the question of whether to grant the waiver should not have been addressed at all, that discussion is dicta.

[7] In a legal sleight-of-hand, the majority asserts that "Dr. Befeler's report was filed prior to Dr. Renny's answer—well within the time frames provided in the Affidavit of Merit statute—and was declared by the trial judge to satisfy the substantive requirements of the statute. Put another way, a proper affidavit of merit was, in fact, timely filed." *Ante* at 48 n. 4, 999 A.2d at 434 n. 4. As the discussion that follows amply demonstrates, the majority's reasoning is nothing more than the exercise of "the false logic of 'Post hoc, ergo propter hoc analysis[,]' " *Schulman v. Male*, 70 *N.J.Super.* 234, 240, 175 A.2d 450 (App.Div. 1961), and merits no additional response. See *Black's Law Dictionary* 1285 (9th ed. 2009) (translating *"post hoc, ergo propter hoc "* as "after this, therefore because of this" and defining phrase as "[o]f or relating to the fallacy of assuming causality from temporal sequence; confusing sequence with consequence").

of merit at all. *See Palanque v. Lambert–Woolley,* 168 *N.J.* 398, 404–06, 774 *A.*2d 501 (2001) (explaining that failure to file timely and compliant affidavit of merit results in dismissal of complaint "unless extraordinary circumstances prevented the filing" and that "attorney inadvertence will not support the extraordinary circumstances standard"). Were it otherwise, the clear and mandatory provisions of the Medical Care Access Act would be swallowed whole by its waiver provision thus making both provisions irrelevant, a nonsensical result the Legislature never could have contemplated. *American Fire and Cas. Co. v. N.J. Div. of Taxation,* 189 *N.J.* 65, 81, 912 *A.*2d 126 (2006) ("[W]e must construe statutes in a manner that avoids unreasonable results unintended by the Legislature." (citation omitted)); *Liberty Mut. Ins. Co. v. Land,* 186 *N.J.* 163, 178, 892 *A.*2d 1240 (2006) (" '[A] court should strive to avoid statutory interpretations that lead to absurd or unreasonable results.' " (quoting *State v. Lewis,* 185 *N.J.* 363, 369, 886 *A.*2d 643 (2005))).

Nor can it be said that by filing a non-complying affidavit of merit plaintiff nevertheless met the substantial compliance standard and, thus, should be allowed, after the fact and in an untimely manner, to seek a waiver of the statutory requirements. This Court repeatedly has made clear that

[t]he doctrine of substantial compliance requires that a defaulting party demonstrate the following:

(1) lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim, and (5) a reasonable explanation why there was not a strict compliance with the statute.

[*Fink v. Thompson,* 167 *N.J.* 551, 561, 772 *A.*2d 386 (2001) (citation omitted).]

There is scant need to delve deeply into whether plaintiff can satisfy these factors, as it is obvious plaintiff is unable to make even a prima facie showing that she can satisfy the first and last factors: that there be a lack of prejudice to the defending party and that there be a reasonable explanation for the statutory noncompliance.

In *Ferreira, supra,* this Court made a covenant. This Court explained that if a "plaintiff has in hand an affidavit within the 120–day statutory period and serves the affidavit on defense counsel outside that time frame but before defense counsel files a motion to dismiss, the defendant shall not be permitted to file such a motion based on the late arrival of the affidavit." 178 *N.J.* at 154, 836 *A.*2d 779. Conversely, this Court promised that "[i]f defense counsel files a motion to dismiss after the 120–day deadline and before plaintiff has forwarded the affidavit, the plaintiff should expect that the complaint will be dismissed with prejudice provided the doctrines of substantial compliance and extraordinary circumstances do not apply." *Ibid.* That tipping point—the filing of a defendant's motion to dismiss after the expiration of 120 days after the filing of the answer—was adopted to "place[ ] strong incentives on both plaintiffs' and defense counsel to act diligently." *Ibid.*

In this case, plaintiff filed a timely but non-conforming affidavit. While well within the 120–day statutory period, defendant informed plaintiff that plaintiff's affidavit of merit clearly did not meet the requirements of the Medical Care Access Act and, hence, was a nullity. Yet, plaintiff did nothing.

At defendant's—and specifically *not* at plaintiff's—behest, a *Ferreira* conference was held, *id.* at 154–55, 836 *A.*2d 779, where defendant again aired the insufficiency of plaintiff's purported affidavit of merit. Yet again, plaintiff did nothing.

Well after the expiration of the 120–day statutory period for compliance, defendant moved to dismiss plaintiff's complaint for failure to comply with the AMS and the Medical Care Access Act. He did so reasonably expecting, as *Ferreira* promised, that plaintiff's complaint would be dismissed. It was then and only then that plaintiff—expressly conceding that her original affidavit of merit plainly did not satisfy the statutory requirements—sought a waiver from those requirements.

Similarly, despite defendant's early warning that plaintiff needed to seek a waiver of the provisions of the Medical Care Access

Act, the record is barren of any "reasonable explanation why there was not a *strict* compliance with the [AMS]." *Fink, supra,* 167 *N.J.* at 561, 772 *A.*2d 386 (emphasis supplied). While plaintiff, through her counsel, tendered a tepid explanation for her reliance on Dr. Befeler as a substitute, there has been no showing—none whatsoever—why plaintiff did not seek a waiver during the statutorily allowed 120–day period and, in any event, before defendant moved to dismiss. It was only after she faced all-but-certain dismissal that plaintiff finally acted.

That was too little, too late. By that point, plaintiff had forced defendant to move to dismiss because no valid affidavit of merit had been filed, despite defendant's written notice to plaintiff as well as a *Ferreira* conference that underscored the deficiencies in plaintiff's so-called affidavit of merit. The tipping point this Court previously set forth—the expiration of the 120–day statutory period and the filing of a motion to dismiss by defendant—had been met and defendant's statutory right to dismissal of the complaint had vested. Once that occurred, all that remains is for this Court to be true to its word and dismiss plaintiff's complaint.[8]

---

[8] Our precedents also require that, in addition to demonstrating substantial compliance with the AMS's requirements, a non-compliant plaintiff—one who fails to satisfy her AMS obligations before (1) the 120–day extended statutory deadline and (2) the defendant has moved to dismiss the complaint—must prove extraordinary circumstances to avoid a dismissal with prejudice. *Ferreira, supra,* 178 *N.J.* at 151, 836 *A.*2d 779 (citing *Palanque, supra,* 168 *N.J.* at 404–05, 774 *A.*2d 501; *Alan J. Cornblatt, P.A. v. Barow,* 153 *N.J.* 218, 246–47, 708 *A.*2d 401 (1998)). We have explained that "[w]hat constitutes an 'extraordinary circumstance' will require a fact-sensitive analysis in each case[,]" *Hartsfield v. Fantini,* 149 *N.J.* 611, 618, 695 *A.*2d 259 (1997), an analysis we have incorporated into whether dismissal of a complaint for failure to comply with the AMS will be with prejudice. *See Cornblatt, supra,* 153 *N.J.* at 246–47, 708 *A.*2d 401 (adopting *Hartsfield* extraordinary circumstances standard and holding that "[a]bsent extraordinary circumstances, a failure to comply with the [AMS] that requires a dismissal would be with prejudice"); *Tischler v. Watts,* 177 *N.J.* 243, 246–47, 827 *A.*2d 1036 (2003) (applying *Cornblatt* rule in AMS case). Nothing in this record even remotely approaches the species of "extraordinary circumstances" necessary to relieve plaintiff of a dismissal with prejudice, much less a dismissal without prejudice.

## V.

At the very core of this Court's inherent worth as a necessary and relevant institution of government is a straightforward proposition: that it say what it means, and mean what it says. Observance of that simple tenet requires that this Court reaffirm the principles of diligence to and compliance with unambiguous statutory requirements designed to keep judicial decision making from free-falling into chaos. The contradictory message delivered by the majority today, however, stands in stark opposition to those principles. Instead, the majority announces that those who are not diligent and choose to ignore their obligations need not fear for they will be rescued, regardless of the cost to other litigants, to the judicial system, or to the basic respect owed to a co-equal branch of government. In doing so, clearly phrased legislative requirements—the AMS and the Medical Care Access Act—now are relegated to a subsidiary role; those statutes have become judicially neutered scarecrows, providing a warning heeded by the diligent but having no lingering effect on the scavengers.

That process rewards the willful disregard of a legislative mandate; it results in the needless nullification of a thoughtful and reasoned legislative scheme; and it tramples the right to be free of malpractice claims lacking in merit—a right the Legislature intentionally and unequivocally granted to defendant.[9] For each of those reasons, I dissent.

---

[9] That concern has poignantly added weight here, where plaintiff disclosed that she sought supporting opinions from three geographically disparate experts obviously aligned with and recommended by medical malpractice plaintiff's counsel. Despite such auspicious beginnings, each of those experts refused to provide the affidavit of merit plaintiff needed to proceed and, not surprisingly, plaintiff fails to tell us why. Although some may conjure up sundry neutral reasons those experts refused to support plaintiff's claim, the self-evident reason glaringly remains: those experts refused to swear that plaintiff's claim had merit because it patently did not. That fact, standing alone, underscores the reasoning and need for competent and meaningful affidavits of merit as required by both the AMS and the Medical Care Access Act.

*For reversal and remandment*—Chief Justice RABNER, Justices LONG, LaVECCHIA, ALBIN, WALLACE, and HOENS—6.

*For affirmance*—Justice RIVERA–SOTO—1.