63 A.3d 243

NEW JERSEY DIVISION OF YOUTH AND FAMILY SERVICES,[1] PLAINTIFF–RESPONDENT, v. P.H., DEFENDANT–RESPONDENT, AND J.C., DEFENDANT–APPELLANT.

IN THE MATTER OF B.H., K.C., AND L.C., MINORS.

Superior Court of New Jersey
Appellate Division

Argued December 11, 2012—Decided April 5, 2013.

---

[1] Effective June 29, 2012, the Division was renamed the Division of Child Protection and Permanency. *L.* 2012, *c.* 16.

Before Judges FISHER, ALVAREZ and WAUGH.

*Peter Neely Milligan,* Designated Counsel, argued the cause for appellant (*Joseph E. Krakora,* Public Defender, attorney; *Mr. Milligan,* on the brief).

*Michael S. Harwin* argued the cause for respondent P.H. (*Joseph E. Krakora,* Public Defender, attorney; *John A. Salois,* Designated Counsel, on the brief).

*Cynthia J. Schappell,* Deputy Attorney General, argued the cause for respondent New Jersey Division of Youth and Family Services (*Jeffrey S. Chiesa,* Attorney General, attorney; *Lewis A. Scheindlin,* Assistant Attorney General, of counsel; *Ms. Schappell,* on the brief).

*David R. Giles,* Designated Counsel, argued the cause for minors B.H., K.C., and L.C. (*Joseph E. Krakora,* Public Defender, Law Guardian, attorney; *Mr. Giles,* on the brief).

The opinion of the court was delivered by

ALVAREZ, J.A.D.

On June 20, 2011, J.C. was found to have engaged in acts of "both abuse and neglect," as defined in *N.J.S.A.* 9:6–8.21(c)(3) and (4), as a result of sexual conduct towards his two children, L.C. (Mary), born in July 2004, and K.C. (Tom), born in July 2006.[2] The court later terminated the litigation and allowed plaintiff, the Division of Youth and Family Services (Division), to notify a church which had offered J.C. a position as a "youth pastor," that sexual abuse allegations against him had been substantiated. J.C. appeals, and we affirm the first two orders, but reverse that

---

[2] We use pseudonyms to protect the parties' privacy and for ease of reference.

portion of the trial judge's decision regarding dissemination of information.

[At the court's direction, portions of the factual discussion and the court's rulings have been omitted from the published opinion.]

Although not entirely clear, J.C. later abandoned his interest in pursuing the youth pastor position. The Division in turn never made the disclosure.

[At the court's direction, portions of the court's rulings have been omitted from the published opinion.]

## III

In his first point, J.C. contends that the trial court abused its discretion by allowing the Division to provide the church with the information that allegations of child sexual abuse against him were substantiated. The Division counters that the issue is moot because J.C. did not pursue the position and therefore it did not release any information. The Law Guardian, however, urges us to affirm the order because the court and the Division would otherwise lack the means to protect children in the church program, while possessing knowledge that J.C. sexually abused his own children, and had been substantiated for the sexual abuse of a ten-year-old cousin five years earlier.

Records, information, reports, and findings related to Title 9 proceedings "shall be kept confidential and may be disclosed only under the circumstances expressly authorized" to:

(5) An agency, whether public or private, including any division or unit in the Department of Human Services or the Department of Children and Families, authorized to care for, treat, assess, evaluate, or supervise a child who is the subject of a child abuse report, or a parent, guardian, resource family parent or other person who is responsible for the child's welfare, or both, when the information is needed in connection with the provision of care, treatment, assessment, evaluation or supervision to such child or such parent, guardian, resource family parent or other person and the provision of information is in the best interests of the child as determined by the Division of Youth and Family Services. . . .

. . . .

(10) A family day care sponsoring organization for the purpose of providing information on child abuse or neglect allegations involving prospective or current providers or household members....

. . . .

(13) Any person or entity mandated by statute to consider child abuse or neglect information when conducting a background check or employment-related screening of an individual employed by or seeking employment with an agency or organization providing services to children ... [and]

(14) Any person or entity conducting a disciplinary, administrative or judicial proceeding to determine terms of employment or continued employment of an officer, employee, or volunteer with an agency or organization providing services for children. The information may be disclosed in whole or in part to the appellant or other appropriate person only upon a determination by the person or entity conducting the proceeding that the disclosure is necessary to make a determination[.]

[*N.J.S.A.* 9:6–8.10a(b)(5), (10), (13), (14).]

*N.J.S.A.* 9:6–8.10a(b) does not include a church as an entity to which the Division may, and upon written request must, release child abuse information as defined in *N.J.S.A.* 9:6–8.10a(a). Nothing in the record establishes that the church in this case fits into any other category found in the statute, such as a daycare center, which would permit the release of information.

Upon a finding that an allegation of abuse and neglect is "substantiated," the perpetrator's name is entered into a Central Registry maintained by the Division. *N.J. Div. of Youth & Family Servs. v. M.R.,* 314 *N.J.Super.* 390, 398, 715 *A.2d* 308 (App.Div.1998); *see also N.J.S.A.* 9:6–8.11. The Division can release Central Registry information to the entities listed in *N.J.S.A.* 9:6–8.10a(b)(1)–(23). Records may otherwise be disclosed only as authorized under *N.J.S.A.* 9:6–8.10a(a)–(g). Churches are not included in either statutory section.

The Law Guardian analogizes this situation, however, to that found in *In re Allegations of Physical Abuse at Blackacre Academy,* 304 *N.J.Super.* 168, 698 *A.2d* 1275 (App.Div.1997). In that case, the Division supplied information regarding an ongoing child abuse investigation to the New Jersey Department of Education, among others, which was not explicitly entitled by statute to receive the information. *Id.* at 179, 698 *A.2d* 1275. *Blackacre* is

distinguishable, however, because the Department of Education is the governmental agency having direct supervisory authority over children in educational institutions who are the subject of child abuse reports, and therefore falls within the purview of the statute. *See N.J.S.A.* 9:6–8.10a(b)(5).

The Division bears the "general obligation to 'take such action as shall be necessary to insure the safety of the [allegedly abused or neglected] child.'" *Blackacre, supra,* 304 *N.J.Super.* at 178, 698 *A.*2d 1275 (quoting *N.J.S.A.* 9:6–8.11) (alteration in original). That is quite different from the disclosure sought to be made in this case. In *Blackacre,* the disclosures concerned an ongoing investigation of child abuse. *Id.* at 179–80, 698 *A.*2d 1275. In this case, the disclosures are intended to prevent the possibility of future abuse to as yet unknown "victims."

The church's activities are not only obviously dissimilar to those of the Department of Education, *N.J.S.A.* 30:5B–3(b) exempts religious organizations from the obligation to make mandatory Central Registry inquiries under the Child Care Center Licensing Act for positions such as that of "youth pastor." The statute states that "child care center" *does not* include "(3) [c]enters or special classes operated primarily for religious instruction or for the temporary care of children while persons responsible for such children are attending religious services...." *Ibid.*

The Law Guardian further contends that the confidentiality shrouding child abuse and neglect proceedings is intended to protect children, not the abusers of children. Be that as it may, principles of statutory construction do not permit us to write "church" into either *N.J.S.A.* 9:6–8.10a(b) or 30:5B–3(b). That is a step only the Legislature can take. Although we are charged with implementing legislative intent, that is quite different from creating a new category in an otherwise comprehensive and detailed statutory scheme. *See Ryan v. Renny,* 203 *N.J.* 37, 54, 999 *A.*2d 427 (2010). In fact, rules of statutory construction require us to "begin[ ] with the words of the statute and ascribe[ ] to them their ordinary meaning." *Ibid.* Thus we must agree with J.C. that the

Division does not have the authority to disseminate any information to the church. That portion of the judge's decision is therefore reversed.

[At the court's direction, the remainder of the court's rulings has been omitted from the published opinion.]