**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1437-19

BRIAN COLLINS and
BARBARA COLLINS, husband
and wife,

       Plaintiffs-Appellants/
       Cross-Respondents,

v.

PJW SERVICES, LLC, a/k/a
P.J. WARD AND SONS,

       Defendant,

and

THOMAS B. WAGNER
ARCHITECT, and THOMAS B.
WAGNER, individually and as a
representative of THOMAS B.
WAGNER ARCHITECT,

       Defendants-Respondents/
       Cross-Appellants.

_____

Argued May 26, 2021 – Decided July 26, 2021

Before Judges Geiger and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-2766-17.

Katherine A. Hopkins argued the cause for appellants/cross-respondents (Wilentz, Goldman & Spitzer, PA, attorneys; Daniel S. Bernheim, III, (Wilentz, Goldman & Spitzer, PA) of the Pennsylvania Bar, admitted pro hac vice, of counsel and on the briefs; Katherine A. Hopkins, on the briefs).

John H. Osorio argued the cause for respondents/cross-appellants (Marshall, Dennehey, Warner, Coleman & Goggin, attorneys; Tracy L. Burnley, on the briefs).

PER CURIAM

Plaintiffs Brian and Barbara Collins appeal from the February 6, 2019 order that: (1) dismissed with prejudice all claims as to defendants Thomas B. Wagner and Thomas B. Wagner Architect (collectively, Wagner); and (2) denied plaintiffs' motion to file a second amended complaint. Defendant Wagner cross-appeals the February 16, 2018 and August 17, 2018 orders denying without prejudice Wagner's motion to dismiss plaintiffs' first amended complaint based on failure to file an Affidavit of Merit (AOM). Although the parties dispute whether Wagner acted in his professional capacity as an architect, the threshold issue in this case is whether plaintiffs' claims are barred by a six-year statute of limitations. For the following reasons, we reverse the February 6, 2019 order and remand for proceedings consistent with this decision.

On January 4, 2010, plaintiffs entered into a contract (the Agreement) with Wagner for "architectural services for home improvement work on" their residence in Haddonfield. Plaintiffs sought to convert their existing garage into a kitchen and family room with a second story and to build a second-floor deck on top of a new two-car garage.

The Agreement divided Wagner's services into three phases: (1) "Schematic Design," (2) "Construction Drawings," and (3) "Construction Administration." Phase Three of the Agreement promised to "either bid the project to several builders or contract with a builder early on in the process who will provide estimates for construction based on the schemes" proposed. It further provided that Wagner would act as plaintiffs' agent and "oversee the contractors' performance, monitor the progress of work, [and] respond to questions from contractors, inspectors, and building code officials." In addition, Wagner would report to "the jobsite as required to ensure the work [was] done in conformance to the contract documents."

A-1437-19

In August 2010, plaintiffs entered into a contract with PJW Services, LLC (PJW),[1] for the construction work on their home. Plaintiffs agreed to pay PJW $195,400 based on the architectural drawings submitted by Wagner. The work commenced around October 2010 and ended around April or May 2011. Plaintiffs experienced multiple issues during construction.

On July 11, 2017, plaintiffs filed an eight-count complaint against PJW and Wagner, alleging: violations of the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20 (counts one through three); violations of N.J.A.C. 13:45A-16.2 (counts four through six); breach of contract (count seven); and breach of express warranty (count eight). Plaintiffs alleged that, "due to a deficient design and/or construction defect, water did not properly drain from the roof causing puddles of water to collect on the roof and/or water intrusion." In addition, "the deficient drainage system caused a significant growth of mold." Plaintiffs asserted that PJW failed to use the building materials described in the plans, namely a specific sheet rubber roof material with a useful life of forty to fifty

---

[1] PJW is not involved in this appeal. After the court dismissed plaintiffs' claims against Wagner, PJW entered into a settlement with plaintiffs, and the court entered a judgment by stipulation against PJW in the amount of $143,725.50.

A-1437-19

years. Instead, the material used by PJW had a useful life of only ten to fifteen years.

Plaintiffs allegedly informed PJW of this leaking roof issue on or about December 12, 2010, and in 2011, 2014, and 2016. They discovered the first signs of mold damage in 2014 and advised PJW about the need for mold remediation in 2016. Plaintiffs claimed that PJW was unresponsive. Plaintiffs supposedly contacted Wagner in 2017 regarding the defective construction, but Wagner responded that he did "not know how the roofing was installed and how it was lapped and the location of the seams" even though he had agreed to act as plaintiffs' agent and be present during construction.

Counts one through six of the complaint alleged that defendants violated the CFA through affirmative acts and acts of omission and that defendants violated N.J.A.C. 13:45A-16.2, which regulates home improvement practices. Plaintiffs claimed PJW violated the CFA by failing to use the agreed upon construction materials, to properly install decking, and to construct a proper drainage system on the garage roof. Plaintiffs claimed that Wagner also violated the CFA by failing to ensure proper construction as promised under the Agreement.

5

Under counts seven and eight, plaintiffs alleged breach of contract and breach of express warranty claims against PJW for failing to properly install decking, to construct a proper drainage system on the roof of the garage, and to use the materials specified in the contract. Plaintiffs also asserted breach of contract and breach of warranty claims against Wagner for failing to ensure construction was completed in accordance with the Agreement.

On August 17, 2017, plaintiffs filed a first amended complaint, adding negligence claims against Wagner and PJW. Under count ten, plaintiffs claimed that Wagner "owed a duty to [p]laintiffs to professionally and competently render construction management services with respect to the construction on [plaintiffs'] home." In addition, plaintiffs claimed that Wagner "owed a duty to professionally and competently monitor the ongoing work at [plaintiffs'] home" by overseeing the contractor's performance, the progress of the work, and "respond[ing] to questions from contractors[,] inspectors, and building code officials." Plaintiffs alleged that Wagner had a duty to "be present on the jobsite as required to ensure the work is done in conformance to the contract documents." Plaintiffs claimed that Wagner "breached this duty, as evidenced by the defective work performed" on the home. They claimed Wagner admitted

he breached his duty when he stated, "I do not know how the roofing was installed and how it was lapped and the location of the seams."

On September 26, 2017, Wagner filed an answer to the first amended complaint that asserted a statute of limitations affirmative defense. On January 31, 2018, Wagner filed a motion to dismiss plaintiffs' complaint for failure to file an AOM, pursuant to N.J.S.A. 2A:53A-27. In response, plaintiffs argued they were not required to file an AOM because they were not alleging architectural negligence as to Wagner.

On February 16, 2018, the trial court heard oral argument and issued an order and oral decision denying Wagner's motion to dismiss without prejudice. The court stayed all discovery except discovery related to whether the filing of an AOM was required. During the hearing, the court explained it was unfamiliar with the terms of art related to construction administration and that it needed additional information to determine whether the construction administration services contemplated within the contract should be classified as architectural services. Thus, the court allowed limited discovery to determine "whether or not [Wagner] acted 100 percent of the time as an architect" during the construction project.

A-1437-19

The court scheduled a <u>Ferreira</u>[2] hearing, but plaintiffs requested a conference with the court before the hearing to discuss information gathered during the AOM discovery. Plaintiffs explained that after inspecting the home and reviewing the architectural drawings for the project with an expert and a third-party contractor, they discovered that the contractor failed to follow Wagner's specifications for the structural joists. Plaintiffs asserted that this failure to install the specified structural joists and joist hangers caused the "joists to fail once they became wet both during construction and ongoing as a result of the leaking roof (original[ly] the subject of plaintiff[s'] complaint and amended complaint)." Plaintiffs further noted that the structural joists used "were not engineered for the structural load and deflection as defined by [plaintiffs'] intended use of the roof deck as a family and guests entertainment venue and were a substitution from the joists architect Wagner specified."

In a letter to the court, plaintiffs alleged Wagner had a duty, pursuant to the project specifications and Building Code Section 107.3.4, to review submittals from the contractor and his suppliers. In addition, plaintiffs noted that the project specifications required "the contractor to submit engineering data [concerning] the structural joists" and advise plaintiffs about any

---

[2] <u>Ferreira v. Rancocas Orthopedic Assocs.</u>, 178 N.J. 144 (2003).

 A-1437-19

substitutions. Plaintiffs alleged that both Wagner and PJW were "jointly responsible for the failure of the roof membrane and the failure of the substituted structural joists supporting the failed roof." Plaintiffs reiterated that their expert and third-party contractor found that "Wagner failed to abide by the building code and his own specifications and is therefore professionally liable for this failure." Notably, plaintiffs explained they "were unaware that the damages to [their] property were indeed [caused] by [Wagner's] professional malpractice and negligence" and they only discovered this negligence upon physical review and inspection of the property by an expert.

Plaintiffs' architectural expert, James Rappoport, performed the destructive examination of the affected area, which revealed that Wagner's specifications for the structural joists were not followed. This examination required the removal of finishings to reveal structural joists and framing. Rappoport "removed certain mold and [mildew] infected ceiling materials to allow [him] to visualize the mold and [mildew] infected structural joists supporting the structurally failed and leaking roof deck above." After inspecting the framing and reviewing the contract specifications, Rappoport opined that Wagner's work "fell outside the acceptable professional standards of care of a

New Jersey architect tasked with preparing plans and specifications and providing construction and contract administration services . . . ."

On July 10, 2018, plaintiffs moved for leave to file a second amended complaint "to add a professional negligence claim[] and allow for service of an" AOM upon Wagner. Wagner cross-moved to dismiss plaintiffs' first amended complaint based on failure to file an AOM. Shortly thereafter, plaintiffs served an AOM prepared by their expert.

On August 17, 2018, the court issued two orders and an oral decision denying plaintiffs' motion to file a second amended complaint and denying Wagner's cross-motion to dismiss without prejudice. Because Wagner raised a statute of limitations defense during oral argument, the court scheduled a Lopez[3] hearing to determine when plaintiffs' cause of action accrued.

The court conducted the Lopez hearing on November 16, 2018 and February 6, 2019. After considering the language in the complaint and the testimony presented, the court determined that plaintiffs' cause of action against Wagner accrued no later than December 12, 2010, when plaintiffs realized "there was some issue" during construction. The court explained that on that date, plaintiffs "knew something was wrong" and "complained about it." The court

---

[3] Lopez v. Swyer, 62 N.J. 267 (1973).

then emphasized the following language in plaintiffs' complaint: "Beginning on or about December 12th, 2010, due to a deficient design and/or construction defect, water did not properly drain from the roof causing puddles of water to collect on the roof and/or water intrusion." The court noted that water intrusion and "water not properly draining from the roof [were] a concern at that point in time."

The court explained that after plaintiffs complained about the leaking roof in 2010, PJW took care of the problem. It emphasized that plaintiffs could have sued Wagner starting December 2010 up until December 2016. The court noted that six years was a long time to investigate and that plaintiffs "should have at least filed by the end of 2016 . . . ." Although plaintiffs argued that the defects in question were hidden, the court explained that "once you know you have a cause of action against somebody, anybody, the law requires you to investigate to make sure that everybody is included" in the action. The court explained:

> Now, the investigation in this case was particularly difficult since it invariably would have required physically damaging the structure, tearing down drywall. That's a concern to the [c]ourt, too. But I'm not aware of a single case that says that we're going to keep tolling the Statute of Limitations until you finally decide to tear down the drywall, until you decide to, in essence, structurally interfere with a building in order to determine exactly who did what.

11

The law . . . requires that once you know that there's something amiss, there's something wrong, you have six years to make your determination. And if it requires you to tear down some drywall or do that type of thing, that's what it requires. If it were otherwise, then the Statute of Limitations could be 100 years.

At the end of the hearing, the court found that all of plaintiffs' claims against Wagner were barred by the statute of limitations. The court explained that once it determined any cause of action "accrued no later than December[] 2010, then none of [plaintiffs'] other causes of action, whether it's ordinary negligence, fraud, whatever it is, have a Statute of Limitations better . . . than six years. So[,] for all those causes of actions, the deadline would have been December[] 2016." Since it found that plaintiffs' claims against Wagner were all time-barred, the court denied plaintiffs' motion to file a second amended complaint. Accordingly, the court issued a February 6, 2019 order dismissing plaintiffs' claims against Wagner with prejudice and denying plaintiffs' motion to file a second amended complaint.[4] This appeal followed.

On appeal, plaintiffs argue:

---

[4] We agree with the parties that the court mistakenly listed N.J.S.A. 2A:53A-27 in the February 6, 2019 order as the reason for dismissing plaintiffs' claims against Wagner. The court based its ruling exclusively on the six-year statute of limitations applicable to contract, negligence, and CFA claims—not for lack of an AOM.

I. THE TRIAL COURT ERRED IN HOLDING THAT PLAINTIFFS' CAUSES OF ACTION ACCRUED IN DECEMBER 2010.

II. THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT ADDING A CLAIM FOR PROFESSIONAL NEGLIGENCE AGAINST WAGNER.

A. THE TRIAL COURT'S DENIAL OF PLAINTIFFS' MOTION TO AMEND WAS BASED ON AN ERROR OF LAW.

B. WAGNER WOULD HAVE SUFFERED NO UNDUE PREJUDICE HAD THE MOTION TO AMEND BEEN GRANTED.

C. THE TRIAL COURT COULD NOT REASONABLY CONCLUDE ON THE RECORD BELOW THAT PLAINTIFFS' PROFESSIONAL NEGLIGENCE CLAIM WAS FUTILE.

III. FAILURE TO FILE AN AFFIDAVIT OF MERIT IN SUPPORT OF THE FIRST AMENDED COMPLAINT DID NOT REQUIRE DISMISSAL OF THE FIRST AMENDED COMPLAINT AND DID NOT SUPPORT DENIAL OF PLAINTIFFS' MOTION TO AMEND.

A. NO AFFIDAVIT OF MERIT WAS REQUIRED TO ESTABLISH PLAINTIFFS' GENERAL NEGLIGENCE CLAIM AGAINST WAGNER AS ASSERTED IN THE FIRST AMENDED COMPLAINT.

13

B. PLAINTIFFS' FAILURE TO FILE AN AFFIDAVIT OF MERIT PRIOR TO SEEKING LEAVE TO AMEND DID NOT RENDER THE PROPOSED AMENDMENT FUTILE AND DID NOT WARRANT DENIAL OF PLAINTIFFS' MOTION TO AMEND.

IV. THE TRIAL COURT ERRED IN DISMISSING WITH PREJUDCE PLAINTIFFS' CONTRACTUAL CLAIMS AGAINST WAGNER.

A. PLAINTIFFS HAVE A VALID BREACH OF CONTRACT CLAIM AGAINST WAGNER SEPARATE AND APART FROM ANY PROFESSIONAL MALPRACTICE AND/OR NEGLIGENCE CLAIMS.

B. PLAINTIFFS' BREACH OF CONTRACT CLAIM DID NOT ACCRUE UNTIL THE TIME THE INJURY WAS DISCOVERED, AND THEREFORE, WAS TIMELY ASSERTED.

C. AN AFFIDAVIT OF MERIT WAS NOT REQUIRED IN SUPPORT OF PLAINTIFFS' BREACH OF CONTRACT CLAIM.

In their cross-appeal, Wagner argues:

I. PLAINTIFFS' AMENDED COMPLAINT ALLEGED NEGLIGENCE ON THE PART OF A LICENSED ARCHITECT AND REQUIRED THE FILING OF AN AFFIDAVIT OF MERIT.

II. PLAINTIFFS FAILED TO ESTABLISH ANY BASIS TO RELIEVE THEM FROM THE REQUIREMENT TO TIMELY FILE AND SERVE AN AFFIDAVIT OF MERIT.

III. PLAINTIFFS' FILING OF AN AFFIDAVIT AFTER DEFENDANTS FILED TWO SEPARATE MOTIONS TO DISMISS DID NOT EXCUSE THEIR FAILURE TO DO SO PURSUANT TO THE STATUTE OR CASE LAW.

I.

Plaintiffs argue that trial court erred in finding that their cause of action accrued in December 2010. We agree.

"[W]hen analyzing pure questions of law raised in a dismissal motion, such as the application of a statute of limitations, we undertake a de novo review." Smith v. Datla, 451 N.J. Super. 82, 88 (App. Div. 2017). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

The statute of limitations for claims alleging negligent construction, breach of contract, and consumer fraud is six years. N.J.S.A. 2A:14-1. Under the discovery rule, however, "a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." Lopez, 62 N.J. at 272. However, "not every delayed discovery will

justify the application of the rule." Cnty. of Morris v. Fauver, 153 N.J. 80, 109 (1998) (citing Lopez, 62 N.J. at 274-75).

The discovery rule is often applied in negligence cases where damages are likely to be "self-concealing or undiscoverable," ibid., including property-tort cases arising from construction defects, Russo Farms, Inc. v. Vineland Bd. of Educ., 144 N.J. 84, 115 (1996). The rule also applies in professional malpractice actions and in actions asserting fraud. Cnty. of Morris, 153 N.J. at 109-10 (citations omitted). See also Belmont Condo. Ass'n, Inc. v. Geibel, 432 N.J. Super. 52, 82 (App. Div. 2013) (applying the six-year statute of limitation set forth in N.J.S.A. 2A:14-1 to CFA claims).

Generally, the discovery rule does not apply in contract cases because "most contract actions presume that the parties to a contract know the terms of their agreement and a breach is generally obvious and detectable with any reasonable diligence." Cnty. of Morris, 153 N.J. at 110. "[T]he discovery rule imposes on plaintiffs an affirmative duty to use reasonable diligence to investigate a potential cause of action . . . ." Ibid.

"Whether the discovery rule applies depends on 'whether the facts presented would alert a reasonable person, exercising ordinary diligence, that he or she was injured due to the fault of another.'" Ben Elazar v. Macrietta

16

Cleaners, Inc., 230 N.J. 123, 134 (2017) (quoting Caravaggio v. D'Agostini, 166 N.J. 237, 246 (2001)). "The standard is basically an objective one—whether plaintiff 'knew or should have known' of sufficient facts to start the statute of limitations running." Ibid. Therefore, "the discovery rule centers upon an injured party's knowledge concerning the origin and existence of his injuries as related to the conduct of another person." Lynch v. Rubacky, 85 N.J. 65, 70 (1981). See also Palisades at Fort Lee Condo. Ass'n v. 100 Old Palisade, LLC, 230 N.J. 427, 447 (2017) ("[A]ccrual occurs when a plaintiff knows or, through the exercise of reasonable diligence, should know of the basis for a cause of action against an identifiable defendant.").

"[I]t is not necessary that the injured party have knowledge of the extent of injury before the statute begins to run." Russo Farms, 144 N.J. at 115 (quoting P.T. & L Constr. Co. v. Madigan & Hyland, Inc., 245 N.J. Super. 201, 207 (App. Div. 1991)). "[L]egal and medical certainty are not required for a claim to accrue." Kendall v. Hoffman-La Roche, Inc., 209 N.J. 173, 193 (2012). Determination of the date of accrual "is highly fact-sensitive" and varies from case to case. Catena v. Raytheon Co., 447 N.J. Super. 43, 54 (App. Div. 2016) (quoting Vispisiano v. Ashland Chem. Co., 107 N.J. 416, 434 (1987)).

A-1437-19

Here, the construction on the home commenced in October 2010 and finished around May 2011. The court determined that plaintiffs' cause of action against Wagner accrued no later than December 12, 2010, when plaintiffs first realized "there was some issue" during construction. The court, however, incorrectly concluded that plaintiffs could have sued Wagner in 2010 while construction was still under way.

"[T]he statute of limitations on an action for deficiencies in design or construction commences to run upon substantial completion of the structure." Mahony-Troast Constr. Co. v. Supermarkets Gen. Corp., 189 N.J. Super. 325, 329 (App. Div. 1983). "A cause of action could not accrue under this type of contract at an earlier date because a civil action for a defect or a deficiency prior to substantial completion would, of necessity, be dismissed as premature" because a "builder is entitled to the entire period prior to substantial completion to rectify any defects in the design or construction before being" sued. Id. at 330 (citations omitted). The construction had not been substantially completed by December 2010. (3T10:15-19).

During the Lopez hearing, Brian Collins testified that he observed leaking water and but did not recall that the joists were wet in December 2010.

However, wood framing above the window was wet. When Brian[5] first observed water intrusion in the garage, construction had been underway for about two months and the roof "was all open," meaning that the wood framing and joists were still exposed. When Brian complained to PJW, they informed him that "construction was still underway[,] that it hadn't been sealed up at [that] point," and that it "wouldn't be an issue" moving forward. As noted by the court, plaintiffs knew something went wrong during construction, but PJW assured it would take care of the problem.

Plaintiffs became aware of an actionable claim in 2014 when Brian noticed that "the wall [of the garage] was starting to discolor" and appeared wet. During the Lopez hearing, Barbara Collins confirmed that there were no "problems with regard to any water intrusion at all" until 2014. (4T74:1-6). There were no issues or complaints concerning water intrusion between Spring 2011 and 2014. So, as noted by the judge, it was not until "some later date" that plaintiffs determined that the water observed during construction in December 2010 was due to a deficient design or construction defect. Indeed, plaintiffs "reasonably could not have known that the architect may have screwed up in 2010 or 2011."

---

[5] We use plaintiffs' first names for reading ease and mean no disrespect.

A-1437-19

In sum, plaintiffs' claims were not barred by the six-year statute of limitations because the cause of action accrued in 2014.

II.

Plaintiffs also argue that an AOM was not required for their general negligence claim against Wagner as asserted in the first amended complaint. Wagner argues that plaintiffs needed to file an AOM because their first amended complaint alleged negligence by a licensed architect.

N.J.S.A. 2A:53A-27 "applies to all actions for damages based on professional malpractice." Hill Int'l, Inc. v. Atl. City Bd. of Educ., 438 N.J. Super. 562, 572 (App. Div. 2014) (quoting Ryan v. Renny, 203 N.J. 37, 50-51 (2010)). "[T]he plaintiff pursuing such a malpractice case must file an affidavit from an 'appropriate licensed person,' stating with 'reasonable probability' that the defendant's conduct 'fell outside acceptable professional or occupational standards or treatment practices.'" Ibid. (quoting N.J.S.A. 2A:53A-27).

This requirement serves the dual purpose of "weed[ing] out frivolous lawsuits early in the litigation while, at the same time, ensuring that plaintiffs with meritorious claims will have their day in court." Ferreira, 178 N.J. at 150 (quoting Hubbard v. Reed, 168 N.J. 387, 395 (2001)). "The legislative purpose was not to 'create a minefield of hyper-technicalities in order to doom innocent

litigants possessing meritorious claims.'" Id. at 151 (quoting Mayfield v. Cmty. Med. Assocs., P.A., 335 N.J. Super. 198, 209 (App. Div. 2000)).

"[W]hen asserting a claim against a professional covered by the [N.J.S.A. 2A:53A-27], whether in contract or in tort, a claimant should determine if the underlying factual allegations of the claim require proof of a deviation from the professional standard of care for that specific profession." Couri v. Gardner, 173 N.J. 328, 341 (2002). If such proof is required, then the claimant must provide an AOM. Ibid. The Court explained:

> It is not the label placed on the action that is pivotal but the nature of the legal inquiry. Accordingly, when presented with a tort or contract claim asserted against a professional specified in the statute, rather than focusing on whether the claim is denominated as tort or contract, attorneys and courts should determine if the claim's underlying factual allegations require proof of a deviation from the professional standard of care applicable to that specific profession. . . .
>
> That analysis will ensure that breach of contract claims that depend on proof of a deviation from a professional standard of care and that are of a frivolous nature will not be brought. Moreover, it also will ensure that tort claims brought against licensed professionals that allege ordinary negligence, but not malpractice, will not be subject to the statute. Stated differently, by asking whether a claim's underlying factual allegations require proof of a deviation from a professional standard of care, courts can assure that claims against licensed professionals acting in a professional capacity that require proof of ordinary negligence but not of a

deviation from professional standards are not encompassed by the statute.

[Id. at 339-41.]

To the extent plaintiffs assert claims related to Wagner's exercise of his functions as a licensed architect, plaintiffs cannot prevail against Wagner without an AOM. Murphy v. New Rd. Const., 378 N.J. Super. 238, 241 (App. Div. 2005). The question of Wagner's status with respect to the allegations at the heart of plaintiffs' claims is an issue of fact that must be resolved before the court addresses plaintiffs' ordinary negligence cause of action. Id. at 242. Notably, this issue also goes to the heart of plaintiffs' breach of contract claim because the allegations against Wagner stem from Wagner's failure to "oversee the contractor's performance" to "ensure that the work was done in conformance with the contract documents"—a term the parties agreed upon. See Couri, 173 N.J. at 334-41 (noting that breach of contract claims may not require an AOM).

Here, the court never reached the merits of the AOM issue, and a Ferreira hearing never took place. Whether the activities performed by Wagner were part of his responsibilities as an architect in connection with the construction project or whether they were a separate function of his responsibility to simply manage the worksite "is manifestly a question of fact." Murphy, 378 N.J. Super. at 242-43. "This question may require expert testimony to enable the finder of

22

fact to make a fair and thorough assessment of [Wagner's] role" based on "standards and practices that prevail in the profession of architecture." Id. at 243. On remand, the court shall address the AOM issue after conducting a Ferreira hearing in accordance with Rule 4:5B-4. The parties shall be afforded a full opportunity to reargue whether an AOM is required, considering the allegations raised by plaintiffs in their second amended complaint.

## III.

Plaintiffs argue that the court erred in denying their motion for leave to file a second amended complaint adding a professional negligence claim. We agree. "Motions to amend pleadings are left to the trial judge's sound discretion and are to 'be granted liberally.'" Liberty Mut. Ins. Co. v. Garden State Surgical Ctr., L.L.C., 413 N.J. Super. 513, 522 (App. Div. 2010) (quoting Kernan v. One Washington Park Urb. Renewal Assocs., 154 N.J. 437, 456-57 (1998)). "The trial judge's 'exercise of discretion requires a two-step process: whether the non-moving party will be prejudiced, and whether granting the amendment would nonetheless be futile.'" Ibid. (quoting Notte v. Merchants Mut. Ins. Co., 185 N.J. 490, 501 (2006)). Motions to amend "should generally be granted even if the ultimate merits of the amendment are uncertain." G&W, Inc. v. East Rutherford Bor., 280 N.J. Super. 507, 516 (App. Div. 1995).

Because plaintiffs' cause of action accrued in 2014, plaintiffs may have a valid cause of action predicated upon the professional negligence claim included in the proposed second amended complaint. Plaintiffs should at least be allowed to assert their professional negligence claim against Wagner. We therefore reverse the denial of plaintiffs' motion for leave to file a second amended complaint.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1437-19